IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FIRST NATIONAL BANK & TRUST COMPANY
OF MOUNTAIN HOME, Special Administrator for the
Estate of Debra Hulse Knighton, Deceased                               PLAINTIFF

V.                          4:06CV00898-WRW

MINNESOTA LIFE INSURANCE
COMPANY                                                                DEFENDANT

**ORDER**

Pending is Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 165). Defendant Minnesota Life Insurance Company has responded and Plaintiff has replied.[1]

**I.    BACKGROUND**

Plaintiff alleged that Floyd Knighton killed Debra Knighton, and, therefore, could not receive the benefits of life insurance policies taken out by Debra Knighton.[2] Plaintiff asked that all of the policies be paid to the Estate of Debra Knighton. Defendants Stonebridge Life Insurance Company and EMC National Life Company filed interpleader actions, and deposited the proceeds of their policies with the Court, so that the proceeds could be distributed after a jury determined whether Mr. Knighton "wrongfully killed" Debra Knighton. However, Defendant Minnesota Life Insurance Company took the position that if Floyd Knighton was "disqualified under the slayer's rule, Minnesota Life [was] relieved of all liability for payment."[3]

---

[1]Doc. Nos. 170, 175.

[2]Doc. No. 2.

[3]Doc. No. 47.

Although the criminal charges against Floyd Knighton were *nolle prossed*, the jury in this civil action found that Floyd Knighton "wrongfully killed" Debra Knighton.[4]  The Judgement was entered on November 19, 2008, and the interpled funds were distributed to Plaintiff on November 25, 2008.

Since Minnesota Life continued to dispute that the Estate was entitled to the proceeds of its policy (its position was that only Floyd Knighton ever had any interest in the policy), Plaintiff and Minnesota Life both filed ERISA briefs as to the Minnesota Life policy in May 2009.[5]  On June 4, 2009, I determined that the Estate of Debra Knighton had an interest in the policy and directed that the proceeds of the policy be surrendered to Plaintiff.[6]

## II.   DISCUSSION

### A.   Attorneys' Fees

The Eighth Circuit Court of Appeals has established the following general guidelines for a district court to consider when determining whether to award attorneys' fees under ERISA:

(1)   the degree of the opposing parties' culpability or bad faith;
(2)   the ability of the opposing parties to satisfy an award of attorneys' fees;
(3)   whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances;
(4)   whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
(5)   the relative merits of the parties' positions.[7]

Although these guidelines are still relevant, its worth noting that this is not the typical ERISA case.  Here, the issue of whether or not the slayer's rule applied was unresolved, because

---

[4]Doc. No. 149.

[5]Doc. Nos. 161, 162.

[6]Doc. No. 163.

[7]*Lawrence v. Westerhaus*, 749 F.2d 494 (8th Cir. 1984).

Floyd Knighton was not prosecuted criminally and denied any wrongdoing. However, rather than interpleading the funds, Minnesota Life argued that only Mr. Knighton had an interest in the Policy, and if Mr. Knighton was disqualified under the slayer's rule, Minnesota Life could keep the funds. As explained in the June 4, 2009, Order, Minnesota Life's reliance on Comment e(3) of Restatement of Restitution § 189(1) was contrary to both Arkansas law and the Eighth Circuit's view. Furthermore, I determined that even if Comment e(3) applied, the Estate would still be entitled to the proceeds. Accordingly, attorneys' fees factors (1) and (5) weigh in favor of Plaintiff. Also, factors (2), (3), and (4) each favor Plaintiff. Since all of the Eighth Circuit's factor favor Plaintiff, I find that Plaintiff is entitled to attorneys' fees and costs.

The requests for costs will be reduced by the hours of work that involved the other insurance Defendants. However, Plaintiff will be awarded fees for the work involving Minnesota Life, as well as all trial-related work (both before, during, and after). Based on my calculations, Mr. Bailey spent 150.3 hours on these issues, and Mr. Oliver spent 137.8 hours.

Plaintiff submitted a time sheet for Mr. Brian Brooks requesting $175 an hour for 18.5 hours of work. However, I was unable to understand his time keeping methods, and his descriptions of work were vague. Accordingly, his hourly rate will be $150 rather than $175.

**B.     Costs**

Since Minnesota Life did not specifically address Plaintiffs' request for $7,577.29 in costs, I assume it has no objection to this amount; so, the request for costs is granted.

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 165) is GRANTED. Accordingly, Plaintiffs are entitled to $53,505.00[8] in attorneys' fees and $7,577.29 in costs from Defendant Minnesota Life .

IT IS SO ORDERED this 20th day of July, 2009.

    /s/ Wm. R. Wilson, Jr.
    UNITED STATES DISTRICT JUDGE

---

[8] The hourly rates of Mr. Bailey and Mr. Oliver were uncontested. Mr. Bailey: $200/hr x 150.3 hours = $30,060.00; Mr. Oliver: $150/hr x 137.8 hours = $20,670.00; Mr. Brooks: $150/hr x 18.5 hours = $2,775.00.

4